Plaintiff brought this suit against the New Orleans Public Service, Inc., for damages in the amount of $762, due to alleged physical injuries sustained by her while she was alighting from a passenger bus operated by the defendant. The defendant answered denying liability.
There was judgment below in favor of defendant, dismissing plaintiff's suit and she has appealed.
Plaintiff testified that on the 21st day of June, 1940, she boarded a passenger bus operated by the defendant company; that on reaching the intersection of Canal and *Page 123 
Decatur Streets, when, in attempting to alight through the automatic doors, which were on the right side of the bus near the center, the doors suddenly and violently closed, catching and jamming her left arm between them; that, by pulling and jerking her arm, she managed to release herself, with the result that she suffered a severe bruise of the arm, and a sprained back; that she was confined to her house for three weeks, and that at the time of the trial below (March 6, 1941) she was still incapacitated.
Mrs. Ritchie, a sister of plaintiff, testified that she was a passenger on defendant's bus in company with plaintiff; that on reaching the intersection at which she and plaintiff were to alight, she proceeded ahead, with plaintiff following; that on alighting from the bus, she heard plaintiff scream, turned around and saw plaintiff with her arm caught between the folding doors; that she ran to the front of the bus, and notified the driver; that the accident had occurred while the bus was stationary. She further testified that she gave plaintiff's name to the bus driver and took the number of the offending bus.
Leland Dubuc, also a passenger, who had alighted ahead of plaintiff and who was standing facing away from the exit of the bus, testified that just as the bus started to move away, the screams of a lady caused him to turn around and he saw plaintiff crying and holding her arm.
The testimony of the bus driver is to the effect that no accident happened on his bus that day, nor was his attention called to an accident or injury to anyone at the intersection of Canal and Decatur Streets, and that if such an accident as complained of occurred, he would have, as required by company regulations, made out and filed with the company, a detailed report thereof.
The record shows that the defendant did not receive any report of the accident in question until four weeks after its alleged occurrence, and this by letter addressed to it by plaintiff's attorney.
According to the testimony of Anthony E. Labare, the general foreman of defendant's bus garage, the bus allegedly involved was in good mechanical condition on the date of the alleged accident, having had its regular thousand mile check-up three days previous. He testified that the edges of each of the doors are equipped and lined with strips of soft rubber two and one-half inches wide, and one-eighth of an inch in thickness; that this rubber lining is on the side of each door nearest the passenger's body; that the driver, on receiving a signal from a passenger desiring to alight, presses a button before the doors are opened, which locks the brakes and the motor accelerator, thus preventing movement of the bus while the doors are opened; that on alighting, a passenger must step on what is called a "treadle plate" located on the step of the bus which, as long as the passenger's weight is on the step, causes the doors to remain open; that when the rubber strips lining the doors come in contact with an object, such as a hand, the doors immediately open through automatic electric control, and as long as the obstacle remains the doors will continue to open and close in what he terms a "fanning operation"; that whenever the door, in closing, contacts an object, a bell, near the operator, will ring signalling him that fact.
The record discloses that plaintiff, while alighting from this bus, did not grasp or hold on to any stanchion, pole or other object in the bus so as to assist her descent. It is shown that she descended from the bus with her arms normally by her side, and that while so standing on the pavement, after alighting, she contends that her arm was caught between the closing doors.
From the proof of the innocuous operation of the doors in question, we are convinced, as was our learned brother below, that the alleged accident did not occur as plaintiff would have us believe.
It appears from the record that in addition to the testimony of the witnesses heard the trial judge had fully acquainted himself, by personal investigation, with the construction of doors on similar busses, their operation and total lack of danger, and which served, in part, as one of the controlling reasons prompting the dismissal of plaintiff's suit, he being fully convinced that it was practically impossible for an injury to have been sustained in the manner claimed by plaintiff.
Furthermore, a reading of the medical testimony raises serious doubt in our minds as to an injury suffered by plaintiff. Dr. Ogden, who examined plaintiff on the day following the accident, testified that he found no evidence of bruises and that plaintiff's complaints were purely subjective, and that he recommended that plaintiff have X-ray pictures made of the injuries *Page 124 
she complained of. It is shown that this advice was never heeded, nor did plaintiff receive any hospital or medical treatment other than ministrations by her sister.
It is well settled that a plaintiff carries the burden of proving, with legal certainty, the facts upon which he relies. Authorities in support of this legal principle are too numerous to cite.
We have often applied the wisely established and sound rule that the findings of a court, a quo, on questions of fact should not be disturbed unless there appears manifest error. We appreciate that the judge below was afforded the opportunity of hearing and viewing the witnesses, their appearances and demeanor, the reasonableness of their testimony, and the opportunity of personally viewing the various exhibits tendered for his inspection, at an end to determine whether the accident in truth and fact occurred.
Our conclusion is that the plaintiff has failed to make out a case. This was the view entertained by the court below, and we cannot say that, in dismissing plaintiff's suit, he committed reversible error.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.